IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Cynthia A. Breyman, | Case No. 3:15CV01503 |
| Plaintiff, | |
| v. | **ORDER** |
| RR Donnelley & Sons Co., | |
| Defendant. | |

This is an employment discrimination case. Plaintiff Cynthia Breyman brought suit against her former employer–defendant RR Donnelley & Sons Co.–alleging gender discrimination in violation of O.R.C. § 4112.02 and constructive discharge.

Jurisdiction is proper under 28 U.S.C. § 1332.

Pending is defendant's motion for summary judgment (Doc. 12). For the reasons that follow, I grant the motion.

**Background**

Beginning in 1985, plaintiff worked as a press takeaway employee at defendant's facility in Willard, Ohio. By 1994, plaintiff had advanced to the position of assistant pressman and remained in that position until her resignation in October 2013. Throughout plaintiff's time at the defendant's facility, she maintained a positive employment record, as evidenced by statements of her supervisors and various performance reviews.

In the Spring of 2012, plaintiff applied for a promotion to press operator, a position to which she had unsuccessfully applied numerous times. Plaintiff noted in her brief that since

1985, defendant had only twice promoted a female employee to this position at the Willard facility. To be eligible for an interview for the press operator position, an employee must have the requisite qualifications, which include experience, tenure in one's current position, attendance record, seniority as an assistant pressman, and positive performance appraisals. The interview with each candidate ultimately determines who receives the promotion. The parties do not dispute that plaintiff had the requisite qualifications to receive an interview.

As was company custom, a group of "facilitators" interviewed the plaintiff for the position. According to plaintiff, some members of the interview team previously demonstrated a gender-based discriminatory animus against her.

Specifically, those individuals were Jeff Chandler and Charlie Daniel. To support the assertion of discriminatory animus and, in turn, her gender discrimination and constructive discharge claims, plaintiff alleges general assertions of a hostile environment for female employees at the Willard facility and refers to specific comments made by Chandler and Daniel; Chandler once said to the plaintiff, "A woman is only smart enough to run a cash register at a grocery store," and Daniel told plaintiff, "the only thing good a woman should be is barefooted and pregnant" and, on seeing plaintiff with a lunch bag, "what's in the bag, bitch." (Plaintiff's Brief in Opposition, p. 4).

Chandler's comment occurred in 2005; Daniel's comments in 2005 and 2009.

Plaintiff did not receive the press operator position. Instead, defendant promoted two male candidates, Carl Puder and Jeremy McDonald. Defendant asserts it chose the two men instead of plaintiff because the interviewers concluded that they outperformed her in their interviews.

Not long after the interview, the defendant demoted plaintiff to a roll tender position. This action followed her crew's failure to accomplish its goals. Despite all members of the crew being responsible for this failure, defendant demoted only the plaintiff. As a result, plaintiff was ineligible for future consideration for promotion to the press operator position.

Following the demotion, plaintiff, claiming her work environment caused her severe depression, anxiety, and emotional distress, requested FMLA leave.

The company granted that request. Plaintiff, however, never returned to work.

Plaintiff claims she was compelled not to go back to work as a result of harassment by Chandler and Daniel, her failure to obtain the promotion, and the generally unfair treatment–all due, she alleges, to her gender. The defendant's conduct, she contends, violated O.R.C. § 4112.02(A). In addition to claiming bias in the decision not to promote her, she claims the overall work environment was intolerable and justified, on the basis of constructive discharge, her decision not to return after her FMLA leave. Plaintiff requests injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.

**Standard of Review**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the

[unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## Discussion

### A. Gender Discrimination

The gravamen of plaintiff's gender discrimination claim is that defendant promoted two male employees to press operators despite her similar qualifications. Defendant argues I must dismiss plaintiff's discrimination claim because she has failed to make out a *prima facie* case, and, in the alternative, she cannot establish defendant's non-discriminatory reason for selecting the male employees is pretextual. Plaintiff responds that she has presented sufficient evidence to overcome summary judgment.

Ohio law prohibits discrimination in employment on the basis of: "the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person . . . ." O.R.C. § 4112.02(A).

I evaluate claims related to violations of § 4112 under the same standard as claims arising under Title VII. *E.g., Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999).

A plaintiff may prove gender discrimination through direct or indirect evidence. *E.g., Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006); *Kohmescher v. Kroger Co.*, 61 Ohio St. 3d 501, 505 (1991). Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the

employer's actions." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (quoting *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005)).

Plaintiff does not present direct evidence of discrimination in this case. Plaintiff correctly points out that statements of decision makers and other individuals who play a meaningful role in the decision making process can constitute direct evidence of discrimination. *Taylor v. Bd. of Educ. of Memphis City Schools*, 240 F. App'x 717, 720 (6th Cir. 2007). Here, however, the sex-based statements made by Chandler and Daniel, who were part of plaintiff's interview team, are insufficient to constitute direct evidence.

In the Sixth Circuit, statements made long before the alleged discriminatory action occurred do not constitute direct evidence of discrimination. *See, e.g., Johnson v. Metro. Gov't*, 502 F. App'x 523, 534 (6th Cir. 2012) (memorandum written three years prior to promotion decision did not constitute direct evidence of discrimination); *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004) (statements made ten years prior to plaintiff's termination were not "sufficiently close in time to the allegedly discriminatory action" to constitute direct evidence of discrimination); *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025-26 (6th Cir. 1993) (statements concerning plaintiff made a year before his layoff did not constitute direct evidence of discrimination).

Here, Chandler's "barefoot and pregnant" comment occurred in 2006, six years before plaintiff's application for promotion and seven years before her resignation. Similarly, Daniel made the latter of his two statements ("cash register" and "bitch") in 2009, three years before plaintiff's application for promotion and four years before her resignation. These comments were

not sufficient, as a matter of law, to manifest discriminatory animus in their preferring two male applicants over the plaintiff.

There being insufficient direct evidence of discrimination, I examine this case under the three-part indirect evidence framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this framework, to survive a motion for summary judgment, a plaintiff must first establish a *prima facie* case of employment discrimination. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). To do so, a plaintiff must demonstrate: 1) she is a member of a protected class; 2) she applied and was qualified for the position; 3) she did not receive the promotion; and 4) a similarly qualified employee who was not a member of the protected class received the promotion. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000); *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999).

Next, if a plaintiff makes out a *prima facie* case, the burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for its action. *Michael, supra,* 496 F.3d at 593.

Finally, if the employer makes that showing, the plaintiff has the burden of proving that the employer's rationale is merely a pretext offered to conceal discrimination. *Id*. A plaintiff can meet this burden by proving that the employer's stated reason: 1) has no basis in fact; 2) did not actually motivate the decision; or 3) was insufficient to motivate the decision. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).

### 1. Plaintiff's *Prima Facie* Case of Discrimination

Plaintiff sufficiently established a prima facie case of gender discrimination under the first step of the burden-shifting framework.

Defendant only disputes the second element of a *prima facie* claim: namely, whether plaintiff was qualified to be a press operator. To meet this burden, plaintiff has to present credible evidence that her qualifications meet the minimally objective criteria to do that job. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003).

Plaintiff meets that burden here in light of her experience, tenure and seniority as assistant pressman, attendance record, and positive performance evaluations.

Defendant argues that the results of the interviews show that plaintiff was not qualified for promotion. That argument conflates the issues of *prima facie* case and pretext, as the defendant offers those results as the basis for its decision.

What matters is not what, according to the defendant, triggered the outcome, but the fact that plaintiff got, as did the two male applicants, the opportunity to be interviewed. That means, quite simply, that the defendant viewed each applicant, going into the interviews, as qualified for promotion. Thus, at that point, plaintiff and the two male applicants were similar in "all of the relevant aspects." *Knox, supra,* 375 F.3d at 458 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)).

Case law in our Circuit supports this conclusion. In *Alexander v. CareSource*, 576 F.3d 551, 564 (6th Cir. 2009), the court, rejecting the employer's argument that "different, less satisfying answers during [plaintiff's] interview render[ed] [plaintiff] dissimilar to the other candidates," concluded that "subjective impressions do not provide a valid basis for finding

7

dissimilarity." Likewise, in *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 n.6 (6th Cir. 2005), the Circuit stated that "subjective traits or other details about why the non-protected person was in fact selected over the plaintiff" are not proper considerations for the "similarly situated" analysis.

Therefore, plaintiff has made out a *prima facie* case of gender discrimination.

### 2. Defendant's Legitimate, Nondiscriminatory Reasons

In rebuttal, defendant provides a legitimate, nondiscriminatory reason for hiring the two male employees over plaintiff: they scored higher than plaintiff in their interviews. As noted above, the interview is the deciding factor for defendant's promotion decisions. Plaintiff does not dispute that her interview score was lower than the two male applicants. Therefore, defendant's legitimate, nondiscriminatory explanation for its promotion decision is sufficient to shift the burden back to plaintiff.

### 3. Pretext

The determinative issue in this case is thus whether plaintiff can prove it is "more likely than not" that defendant's explanation for its promotion decision is pretextual and that gender motivated the organization's decision.

Plaintiff fails to demonstrate pretext under any of the available methods. First, she does not establish defendant's proffered reason for promoting the male applicants has no basis in fact: *i.e.,* defendant's asserted basis for the failure to promote her is "factually false." *Manzer, supra,* 29 F.3d at 1084 (citing *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 110, 1123-24 (6th Cir. 1994)). Here, plaintiff has not suggested, much less shown, that she outscored the other two candidates in the interviews.

Plaintiff also fails to show a trier of fact could find the proffered reasons for defendant's promotion decision did not actually motivate the decision or were insufficient to motivate the decision. Plaintiff has failed to show "an illegal motivation was *more* likely than that offered by the defendant." *Id*. To meet this burden, plaintiff had to present evidence that the defendant treated other employees, particularly those not in the protected class, differently despite conduct similar to the plaintiff. *Id.*

Plaintiff argues that Chandler and Daniel expressed conflicting reasons for their evaluations. That fact, she contends, casts doubt on whether the interview actually motivated or was sufficient to motivate the failure to promote her. In evaluating a claim of pretext:

> [t]he determination of whether an employer reasonably relied on the facts before it does not "require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."

*Duggan v. Orthopaedic Inst. of Ohio, Inc.*, 365 F. Supp. 2d 853, 861 (N.D. Ohio 2005) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)); *see also Seay v. Tenn. Valley Auth.*, 340 F. Sup. 2d 832, 842 (E.D. Tenn. 2004) ("It is axiomatic that . . . [a] Court does not sit as a 'super-personnel' board of review to second guess or re-examine an employer's nondiscriminatory business decisions.").

Here, defendant's process for promoting employees depends solely on the interview score of each applicant who was sufficiently qualified to be interviewed. If one applicant scores higher, that applicant receives the promotion over a lower-scoring applicant. This is precisely what occurred in this case. The two males outperformed plaintiff and got promoted. Because this is how the defendant's promotion policy operates, plaintiff cannot argue the interview score was insufficient to motivate the defendant's decision. Whether this mechanism for making promotion decisions is correct or desirable is not for me to decide.

9

Defendant, moreover, has provided examples of why the interviewers believed the two male applicants' interview performances were superior to plaintiff's performance. Among these was their ability to provide "real time answers" to interview questions based on prior press operator experience. By using the interview process, defendant demonstrates it made a reasonably informed and considered decision.

In response, plaintiff fails to establish that the members of the interview team did not actually rely on the interview performances. Simply put, plaintiff fails to show that her gender, instead of what Chandler and Daniel saw and heard during the interviews, illegally motivated their decision.

Finally, plaintiff, as already noted, cannot point to the sex-based comments made years earlier by Chandler and Daniel to establish pretext. *See Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 347 (6th Cir. 2012) (concluding race-based comments made three years before the adverse employment action were not evidence of pretext; *Phelps*, *supra,* 986 F.3d at 1025-26 (concluding age-related comments made a year before the adverse employment action were not evidence of pretext).

Similarly, the comments are isolated in nature, which also makes them insufficient for purposes of pretext. "[I]solated and ambiguous comments 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'" *Phelps, supra,* 986 F.2d at 1025 (quoting *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.3d 309, 314 (6th Cir. 1989)); *see also Smith v. Sec'y of Veteran Affairs*, 2011 WL 3912105, *13 n.7 (S.D. Ohio) (holding two statements, "even if an anti-male animus can be derived from them, are isolated, ambiguous comments insufficient to support any claim of discriminatory animus on the basis of gender").

In some instances, where other evidence buttresses the relevance and significance of an isolated expression of bias, a plaintiff can prevail on a claim of pretext. *See Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir. 1995) (holding a reasonable jury could find plaintiff was fired because of her age based on age-related statements that were "buttressed by . . . other evidence"). Here, no other evidence provides such support for plaintiff's effort to show pretext.

Plaintiff's description of her work environment and the sex-based comments of defendant employees, while troubling, does not meet the standard of establishing pretext. Because plaintiff cannot prove defendant's reason for hiring the two male employees was pretextual, no genuine issue of material fact remains. Therefore, I grant summary judgment as to her gender discrimination claim.

## B. Constructive Discharge

Plaintiff claims that enduring years of harassment as a woman in a male-dominated workforce, the failure to be promoted, and being singled out for a demotion made her decision to quit a constructive discharge. I disagree: plaintiff's claim fails because she cannot meet the very demanding standard for finding a constructive discharge.

A plaintiff is constructively discharged where "the employer . . . deliberately created[d] intolerable working conditions, as conceived by a reasonable person, with the intention of forcing the employee to quit and the employee . . . actually quit[s]." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999).

To determine whether a constructive discharge occurred, courts examine both the employer's intent and the employee's objective feelings. *Id.* (citing *Held v. Gulf Oil Co.*, 684

F.2d 427, 432 (6th Cir. 1982)). In the Sixth Circuit, courts consider the following factors to determine whether working conditions would compel a reasonable person to resign:

> 1) demotion; 2) reduction in salary; 3) reduction in job responsibilities; 4) reassignment to menial or degrading work; 5) reassignment to work under a younger supervisor; 6) badgering, harassment, or humiliation by the employer calculated to en courage the employee's resignation; or 7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

Further, when an employee alleges constructive discharge, I must, from the point of view of a reasonable member of the protected class, examine the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance.'" *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

I conclude a rational jury could only find that a reasonable person would not find plaintiff's working conditions so intolerable that he or she would have felt compelled to resign. Plaintiff, therefore, cannot meet the first element of her constructive discharge.

First, plaintiff cannot rely solely on her demotion to argue she felt compelled to resign because she left work immediately after receiving notice of the demotion. Without working even one day in the roll tender position, plaintiff cannot argue the demotion constituted a constructive discharge. *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991) ("A demotion within a company does not amount to a constructive discharge unless the proffered employment options would have been 'so difficult or unpleasant that a reasonable person in the

employee's shoes would have felt compelled to resign.'") (quoting *Yates v. Avco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987); *Held, supra,* 684 F.2d at 432)*; see also Bielert v. N. Ohio Props.*, 1988 WL 125357, *4 (6th Cir. 1988) ("[A] failure to make any attempt to try out a job change or reassignment generally suggests against a finding of constructive discharge.").

Further, the isolated, temporally distant statements by Chandler and Daniel, while certainly offensive and, in part, vulgar, were neither frequent nor physically threatening or humiliating. No rational trier of fact could conclude that those statements would have led a reasonable person to suddenly abandon her job.

Claimants who survived summary judgment on constrictive discharge claims presented evidence of vastly more severe conduct than the evidence plaintiff presents. *See, e.g., Jordan v. City of Cleveland*, 464 F.3d 584, 596-98 (6th Cir. 2006) (finding a genuine issue of material fact where plaintiff was subjected to "various racial slurs, demeaning jokes and inflammatory graffiti, [and] isolation and segregation"); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563-64 (6th Cir. 1999) (finding a genuine issue of material fact where plaintiff was subject to incidents that "were not merely crude, offensive, and humiliating, but also contained an element of physical invasion"); *Hollar v. RJ Coffey Cup, LLC*, 505 F. Supp. 2d 439, 454-55 (N.D. Ohio 2007) (finding a genuine issue of material fact where plaintiff was subjected to repeated and persistent offensive sexual remarks on a daily basis and inappropriate bodily contact).

Because plaintiff cannot show the working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign, no genuine issue of material fact remains. Therefore, I grant summary judgment as to her constructive discharge claim.

**Conclusion**

Because there is no genuine issue of material fact as to whether defendant violated O.R.C. § 4112.02 or whether plaintiff was constructively discharged, summary judgment is warranted.

It is, therefore,

ORDERED THAT: defendant's motion for summary judgment (Doc. 12) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge